OUTTEN & GOLDEN LLP
Cara E. Greene
Gregory S. Chiarello
Menaka N. Fernando
685 Third Avenue , 25th Floor
New York, NY 10017

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAN NUSBAUM,<br><br>     Plaintiff,<br>  v.<br><br>E-LO SPORTSWEAR LLC,<br><br>     Defendant. | **Case No. 17 Civ. 3646 (KBF)** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P. 12(c)**

**PRELIMINARY STATEMENT**

Plaintiff Jan Nusbaum ("Plaintiff" or "Ms. Nusbaum"), moves this Court for judgment on the pleadings in her favor on her claim for breach of contract against her former employer, Defendant E-Lo Sportswear LLC ("Defendant" or "E-Lo")[1] and an award of damages and prejudgment interest pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. At the time of hire, Plaintiff and Defendant entered into a valid contract, which obligated Defendant to pay Ms. Nusbaum nine months' salary as severance upon the termination of her employment. Defendant materially breached the contract by refusing to pay Ms. Nusbaum the contractually-owed severance she was due upon termination of employment.

**STATEMENT OF FACTS**

Plaintiff is a business leader and a marketing veteran in the fashion industry. (Compl. ¶10.) In March 2015, E-Lo, a clothing manufacturing and distribution company based in New York, hired Ms. Nusbaum to be the President of the Nanette Lepore brand. (Compl. ¶¶12, 17; Answer ¶¶13, 17.) At the time of her hire in March 2015, and after several weeks of negotiations, Ms. Nusbaum entered into a valid employment contract with E-Lo (the "Contract"), whereby E-Lo obligated itself in writing to, among other things, pay Ms. Nusbaum nine months of base salary as severance pay in the event of the termination of her employment. (Compl. ¶¶18-20.)

Through a series of emails between February 27, 2015 and March 24, 2015, Ms. Nusbaum and David Lomita, the President and CEO of E-Lo, negotiated and ultimately agreed to several terms and conditions of Ms. Nusbaum's employment. (Jan Nusbaum Decl. in Supp. of

---

[1] Plaintiff brings this motion pursuant to this Court's direction at the Initial Pre-Trial Conference of this matter held on July 26, 2017.

Pl.'s Mot. ["Nusbaum Decl."] ¶¶1-3, Exs. A, B & C.[2])  In exchange for Ms. Nusbaum's services as President of the Nanette Lepore brand, on February 27, 2015, Mr. Lomita first offered and confirmed via email, among other terms, an annual base salary of $320,000 and two weeks of vacation, and indicated that the parties would continue to discuss the severance and bonus structure. (Nusbaum Decl. ¶1, Ex. A.) On March 13, 2015, Ms. Nusbaum countered in writing, proposing a base salary of $325,000, express medical, dental and 401K benefits, three weeks of vacation, a company credit card and cell phone, and a severance payment of one year if terminated within the first eighteen months of employment and nine months' severance thereafter.  (Nusbaum Decl. ¶2, Ex. B.) On the bonus structure, Ms. Nusbaum proposed that she be eligible for 100% of her salary if she met certain objectives in three performance categories, with each category accounting for a third of her bonus. (*See id.*)

On March 19, 2015, Mr. Lomita emailed in response that he agreed to Ms. Nusbaum's proposed salary, benefits, and vacation, but on the severance term, countered at six months and indicated that he wanted to add a non-compete provision to run commensurate with the severance payment period. (*See id.*) On the bonus structure, Mr. Lomita agreed that Ms. Nusbaum would be eligible for 100% of her salary but proposed that the first two categories of objectives be set at 25%, with 50% of the bonus being discretionary.  (*See id.*) On March 24, 2015, following further negotiations, Ms. Nusbaum emailed Mr. Lomita confirming the terms they had previously agreed upon and proposing nine months' severance if terminated within the first three years and twelve months of severance thereafter. (Nusbaum Decl. ¶3, Ex. C.) On the bonus structure, Ms. Nusbaum agreed that each of the first two categories of objectives would account for 25% of her bonus, respectively, and left the remaining 50% to the discretion of Mr.

---

[2] Exhibits A, B, and C are incorporated by reference to Plaintiff's Complaint for Damages (Dkt. 1).

Lomita: "I didn't know how you want to word it! I leave that in your hands!! I'm ok with whatever you want it to be." (*See id.*)

On March 24, 2015, Mr. Lomita responded that the parties had reached agreement on the essential terms of the contract: job title (president of Nanette Lepore), base salary ($325,000 per year), benefits (medical, dental, 401K, company credit card, cell phone reimbursement), vacation (three weeks), bonus structure (up to 100% of annual salary with 50% based on set goals and 50% subject to his discretion)[3], and severance pay (nine months commensurate with non-compete period). (*See id.*) Indeed, Mr. Lomita forwarded this same email to Sam Kaplan, E-Lo's Chief Financial Officer ("CFO"), indicating his agreement to the stated terms pertaining to Ms. Nusbaum's employment: "Sam . . . *I am agreeing to the below* and I am ccing Jan." (*See id.*) (Emphasis added). The Contract was supported by adequate consideration, including Ms. Nusbaum's agreement to undertake employment with Defendant. (Compl. ¶19.) Ms. Nusbaum relied on E-Lo's representations made in the Contract including that the company would pay her nine months of severance when she accepted the position with E-Lo. (Compl. ¶20.)

For approximately nineteen months, the parties performed pursuant to the Contract. (Compl. ¶21.) On October 21, 2016, shortly after Ms. Nusbaum made a protected hostile work environment complaint, E-Lo terminated her employment. (Compl. ¶¶44-45; Answer ¶45.) At the time of termination, Defendant refused to pay Ms. Nusbaum her contractually-owed severance pay of nine months' salary. (Compl. ¶45.)

---

[3] In his e-mail, Mr. Lomita indicated that he did not agree with the specific way Ms. Nusbaum described the bonus term (stating that it could be misread to convey eligibility for 150% of her salary), but made clear that he agreed to her proposed overall bonus structure. (*See* Nusbaum Decl. ¶3, Ex. C.)

**STANDARD OF REVIEW**

A party is entitled to judgement on the pleadings pursuant to Rule 12(c) when the material facts are undisputed, and it is entitled judgment as a matter of law based on the contents of the pleadings. *See*, *e.g.*, *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988) (internal citation omitted); *Carballo ex rel. Cortes v. Apfel,* 34 F. Supp. 2d 208, 213-14 (S.D.N.Y. 1999). In a Rule 12(c) motion involving a breach of contract action, "contractual interpretation is a question of law, and, under New York law, '[a] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.'" *Hudson Bay Master Fund Ltd. V. Patriot Nat'l, Inc.*, No. 16 Civ. 2767, 2016 WL 6906583, at *3 (S.D.N.Y. Nov. 21, 2016) (quoting *VoiceAge Corp. v. RealNetworks, Inc.,* 926 F. Supp. 2d 524, 529-30 (S.D.N.Y. 2013)). In ruling on such a motion, the Court may consider "the complaint, the answer, any written documents attached to them, . . . any matter of which the court can take judicial notice for the factual background of the case[,] . . . any written instrument attached . . . as an exhibit, materials incorporated . . . by reference, and documents that, although not incorporated by reference, are integral" to the pleadings. *L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir. 2011) (internal citations and quotation marks omitted); *see also GE Funding Capital Mkt. Servs., Inc. v. Nebraska Inv. Fin. Auth.*, No. 15 Civ. 1069, 2016 WL 4784002, at *2 (S.D.N.Y. Sept. 14, 2016) (internal citation omitted). Here, the Court may consider the parties' pleadings and documents incorporated by reference therein in ruling on the subject motion.

**ARGUMENT**

I.   **The Series of Emails Between Ms. Nusbaum and E-Lo Constitute a Valid, Enforceable Contract.**

The series of emails between Ms. Nusbaum and Mr. Lomita between February 27, 2015 and March 24, 2015 constitute a binding agreement as they set forth the parties' negotiations and ultimately, mutual assent to terms and conditions of Ms. Nusbaum's employment. (*See* Nusbaum Decl. ¶¶1-3, Exs. A-C.) Under New York law, in order to recover under a breach of contract claim, a plaintiff must prove "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal citation omitted). The existence of an agreement is demonstrated by establishing the necessary elements of a valid contract: an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound. *Kowalchuck v. Stroup*, 61 A.D. 3d 118, 121, 873 N.Y.S. 2d 43, 48 (2009). The "meeting of the minds" element is met where the plaintiff demonstrates agreement on all the essential terms of the contract. *Id.* at 124. Mr. Lomita's last email makes clear that the parties had reached agreement on the essential terms of the contract: job title (president of Nanette Lepore) base salary ($325,000 per year), benefits (medical, dental, 401K, company credit card, cell phone reimbursement), vacation (three weeks), bonus structure (up to 100% of annual salary with 50% based on set goals and 50% subject to his discretion) and severance pay (nine months commensurate with non-compete period). (*See id.*) The parties left no material terms to be negotiated at a later date.

Further, the finalized terms reflected by the series of March 24, 2015 emails are clearly signed by each of the parties: Mr. Lomita signed his email as "David Lomita / President & CEO/ Elo Sportswear/Zaralo LLC/ Sharagno Worldwide/ Direct Alternatives," while Ms. Nusbaum

signed off her correspondence with, "Best, Jan." (*See id.*) In the same way that traditional correspondence can qualify as an enforceable contract under New York's Statute of Frauds, email correspondence that set forth all the relevant terms of an agreement can constitute an enforceable contract. *Forcelli v. Gelco Corp.*, 109 A.D. 3d 244, 249, 972 N.Y.S. 2d 570 (2013) (in personal injury action, defendant counsel's email communication confirming plaintiff's acceptance of settlement offer constituted an enforceable agreement because it contained expression of mutual assent to essential terms of the settlement amount in exchange for a release of claims). In *Stevens v. Publicis*, *S.A.*, 50 A.D.3d 253, 255-56, 854 N.Y.S. 2d 690 (2008), the court found that a series of emails constituted an agreement to modify the plaintiff's employment duties and constituted a "signed writing" within the meaning of the statute of frauds because the plaintiff/employee and defendant/employer's typed names of the sender at the foot of the document signified their intents to authenticate the document. *See also Rosenfeld v. Zerneck*, 4 Misc. 3d 193, 195-96, 776 N.Y.S.2d 458 (Sup. Ct. 2004) ("This court holds that the sender's act of typing his name at the bottom of the e-mail manifested his intention to authenticate this transmission for statute of frauds purposes and the copy of the e-mail in question submitted as evidence by the defendant constitutes a sufficient demonstration of same."). Here, it is not necessary that the parties have signed the contract, as it falls outside of the Statute of Frauds given that the final contract was capable of being performed within one year's time. *See* N.Y. Gen. Oblig. Law § 5-701 (McKinney). However, the parties' signatures are persuasive evidence that they objectively manifested their intent to be bound by the contract. *See* e.g., *Comolli v. Huntington Learning Centers, Inc.*, 683 F. App'x 27, 29-30 (2d Cir. 2017).

Even where an agreement is unsigned, the agreement may be enforced where objective evidence demonstrates that the parties intended to be bound by the agreement. *Kowalchuck,* 61

A.D. 3d 125 (valid contract was formed absent executed agreement where parties did not indicate an intent not to be bound until agreement was executed by both parties).  Here, Mr. Lomita confirmed the parties' agreement by forwarding the email to the company's CFO and further evidencing his intent to enter into an enforceable contract pertaining to Ms. Nusbaum's employment. *See Stevens*, 50 A.D. 3d 255-56 (finding that in addition to signed emails, confirmation of agreement being sent to third party is evidence of mutual assent).  Thus, the emails establish an enforceable contract.

**II.     The Parties' Nineteen Months of Performance Under the Contract Evidence the Existence of a Valid, Binding Agreement.**

Immediately upon agreement of the terms of her employment, Ms. Nusbaum assumed her role as President of the Nanette Lepore brand while E-Lo provided the agreed upon salary and benefits on an ongoing basis. (Compl. ¶¶12, 17; Answer ¶¶17.). Performance under a contract demonstrates the parties' intent to be bound by its terms. *See Delyanis v. Dyna-Empire, Inc.*, 465 F.Supp.2d 170, 172, 174 (E.D.N.Y. 2006) (mediator's handwritten recording of agreement between the parties constituted an enforceable contract where plaintiff subsequently affirmed that mediator could notify the court of settlement). In this case, the parties performed under the agreement for nearly nineteenth months, during which time Ms. Nusbaum made Nanette Lepore into a competitor. Compl. ¶21. Despite this, Defendant terminated Ms. Nusbaum's employment and breached the Contract by failing to pay her contractually-owed severance of nine months' salary. Compl. ¶45. *See Scudder v. Jack Hall Plumbing & Heating, Inc.*, 302 A.D.2d 848, 850-51, 756 N.Y.S. 2d 330 (2003) ("Where . . . the parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms") (internal quotations omitted).

Defendant's failure to pay Ms. Nusbaum her contractually-owed severance resulted in damage that she is entitled to recover. When an employer breaches an employment agreement, an employee is entitled to recover "the amount of wages and other benefits he/she would have received under the contract." *Siegel v. Laric Entertainment Corp.*, 307 A.D.2d 861, 862, 763 N.Y.S. 2d 607 (2003).  Defendant cannot dispute that it failed to pay Ms. Nusbaum a severance. And as a direct result of Defendant's breach, Ms. Nusbaum suffered damages in an amount equal to nine months' salary, totaling $243,750 and pre-judgment interest to date totaling $20,109.38.[4] (Compl. ¶68.) Plaintiff requests that the Court enter judgment against Defendant on her breach of contract claim in the sum of these amounts.  *See Pt. Bank Negara Indonesia Persero TBK v. Montage Int'l, Inc.*, No. 98 Civ. 1678, 1998 WL 770531, at *2 (S.D.N.Y. Nov. 2, 1998) (immediately awarding principal and interest amounts upon granting judgment on the pleadings on plaintiff's breach of contract claim).

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court grant her Motion for Judgment on the Pleadings on her breach of contract claim and award damages equal to nine months' salary and pre-judgment interest.

---

[4] The pre-judgment interest is calculated from Ms. Nusbaum's date of termination, October 21, 2016, through the date of filing the instant motion at an interest rate of 9%. *See* N.Y. C.P.L.R. §§ 5001, 5004 (McKinney). Plaintiff reserves the right to amend her calculation as her interest continues to accrue.

9

Dated: New York, New York
       October 5, 2017

**OUTTEN & GOLDEN LLP**

By: <u>*/s/ Cara E. Greene*</u>
Cara E. Greene
Gregory S. Chiarello
Menaka N. Fernando
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

*Attorneys for Plaintiff*