UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

JAN NUSBAUM,                                         |
                                                     |
                          Plaintiff,                 |    Case No.:  17 Civ. 3646 (KBF)
                                                     |
            -against-                                |
                                                     |
E-LO SPORTSWEAR LLC,                                 |
                                                     |
                          Defendant.                 |
                                                     |
                                                     |
                                                     |
------------------------------------------------------------------X

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S CONVERTED MOTION FOR SUMMARY JUDGMENT

---

**GORDON REES SCULLY MANSUKHANI, LLP**
ATTORNEYS FOR DEFENDANTS
ONE BATTERY PARK PLAZA, 28TH FLOOR
NEW YORK, NEW YORK 10004
PHONE: (212) 269-5500
FAX: (212) 269-5505

## **TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND ...........................................................................................2

ARGUMENT ...................................................................................................................5

    I.      STANDARD ...................................................................................................5

    II.     PLAINTIFF CANNOT ESTABLISH HER BREACH OF CONTRACT
           CLAIM ...........................................................................................................5

          A.     Plaintiff Cannot Demonstrate the Formation of an Enforceable
                Contract ...........................................................................................6

                 1.     *The March 24, 2015 Email Exchange Did Not Constitute A
                      Signed Contract* ...............................................................7

                 2.     *The Parties Did Not Intend To Be Bound By The Purported
                      Contract* ...........................................................................8

                 i.     Express Reservation of Right Not to be Bound ..............................9

                 ii.    Unresolved Material Terms ........................................................10

                 iii.   No Partial Performance ...............................................................14

                 iv.   Type of Contract Typically Committed to Writing ......................16

          B.     Plaintiff Has Not Demonstrated the Requisite Performance. ...................16

CONCLUSION ................................................................................................................18

## PRELIMINARY STATEMENT

Plaintiff Jan Nusbaum ("Plaintiff"), brings this action against her former employer E-Lo Sportswear, LLC ("E-Lo" or "Defendant"), raising claims of gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), and the New York City Human Rights Law ("NYCHRL"), as wall as New York state common law claims for breach of contract and promissory estoppel. Plaintiff has moved for summary judgment[1] with respect to her breach of contract claim, arguing that the parties' communications evidence the existence of an enforceable employment agreement, and that Defendant breached that agreement by failing to pay her contractually-owed severance upon her termination. For the reasons set forth herein, Plaintiff's arguments are wholly without merit and her motion for summary judgment must be denied.

Contrary to Plaintiff's assertions, the parties never entered into an enforceable agreement. Throughout their communications, both parties consistently communicated their intent to be bound only by a written agreement signed by both parties, but no such agreement was ever finalized or executed. Indeed, Plaintiff herself expressly reserved her right to only be bound by a signed writing, and her self-serving attempt to now disavow that express reservation is disingenuous and must be rejected. Moreover, the purported contract contains unresolved material terms, including the very term under which Plaintiff now seeks to recover. Finally, Plaintiff cannot demonstrate performance under the contract, as she has made no attempt to establish her compliance with the proposed non-compete clause. Accordingly, because Plaintiff cannot establish the existence of an enforceable agreement, her motion for summary judgment must be denied.

---

[1] Plaintiff initial filed a motion for judgment on the pleadings, which this Court then converted to a motion for summary judgment.

## FACTUAL BACKGROUND

Defendant, E-Lo Sportswear ("Defendant"), is a cutting edge fashion house that manufactures, designs and markets to a mass consumer base throughout the United States, with its principal place of business located at 500 Fashion Avenue, New York, New York 10018. *See* Declaration of Davit Lomita, executed on November 6, 2017 (hereinafter "Lomita Declaration"), at ¶ 2. Plaintiff was an executive employed by Defendant from March 23, 2015, through October 21, 2015, serving as President of Defendant's Nanette Lepore brand. *See id.* ¶¶ 3, 7; *see also* Complaint ¶¶ 17, 45.

In or about February 2015, Plaintiff and Lomita, E-Lo's Chief Executive Officer ("CEO"), began to discuss the possibility of Plaintiff's employment with E-Lo. *See* Lomita Declaration ¶ 3. To that end, on or about February 24, 2015, Plaintiff proposed that she and E-Lo enter into a written employment agreement. *See id.* ¶ 4; Exhibit 1. Although no other E-Lo employee had a written employment agreement, Lomita was willing to consider the possibility with respect to Plaintiff, and asked her to give him an example of what she had in mind. *See* Exhibit 1 at 7.  In response, Plaintiff stated that the agreement could be in the form of an offer letter, "as long as it is signed and agreed to by both of us." *See id.*

On March 13, 2015, Plaintiff sent Lomita an email with the proposed terms of a contemplated employment agreement. *See* Exhibit 2. Among other things, Plaintiff proposed a starting salary of $325,000, three weeks of paid vacation, and paid expenses with a company credit card and reimbursement for her cell phone. *See id.* at 2. Additionally, Plaintiff proposed that she receive one year of severance if let go in the first 18 months, and 9 months of severance if let go thereafter. *See id.* Finally, Plaintiff proposed a bonus structure that would enable Plaintiff to possibly receive a bonus equal to 100% of her base salary, with two-thirds being based on achieving certain financial goals and one-third based on more subjective criteria. *See id.*

2

On March 19, 2015, Lomita sent Plaintiff an email responding to Plaintiff's proposed terms. *See id.* In his email, Lomita stated that he was in agreement with respect to Plaintiff's salary and benefits, but not with respect to the proposed severance and bonus structure. *See id.* With respect to the severance, Lomita proposed a flat six month severance period that would run commensurate with a non-compete/non-disclosure agreement. *See id.* As to the bonus, Lomita countered Plaintiff's proposal by reducing the objective criteria to account for one-half of the potential bonus, and proposed additional criteria on which the other half of the bonus would be based. *See id.* Lomita stated that he was available to discuss the bonus proposal further if Plaintiff would like to do so. *See id.* Finally, Lomita agreed to Plaintiff's proposed start date of March 23, 2015. *See id.*

Plaintiff responded to Lomita's email that same day. *See id.* With respect to the severance, Plaintiff proposed nine months of severance, with an additional three months (for a total of one year) after three years of employment. *See id.* With respect to the non-compete provision, Plaintiff stated that she was okay with it, and requested that Lomita provide "a sentence or two" that would define the nature of the non-compete provision. *See id.* With respect to the bonus, Plaintiff stated that she appreciated where Lomita was coming from and seemed to agree to his proposed changes regarding the bonus. *See id.* Plaintiff further stated that, if Lomita was okay with Plaintiff's proposed changes, he should send a revised agreement that they both would sign. *See id.* at 1.

Plaintiff commenced her employment with E-Lo on March 23, 2015, as an at-will employee without an employment contract. *See* Lomita Declaration ¶ 7. On March 24, 2015, one day after she commenced employment with Defendant, Plaintiff sent a revised proposal for an employment contract, which Plaintiff understood to reflect her prior discussions with Lomita.

3

*See* Exhibit 3. Among other things, Plaintiff proposed a severance term of 9 months if let go within the first 3 years of employment, and 12 months' severance if let go thereafter. *See id.* Plaintiff added that a "Non compete/non disclosure will run commensurate with severance." *See id.* With respect to the bonus, Plaintiff stated that, "[i]f set goals are met 100% of salary or more will be paid," with 25% of the total based on top line sales, and another 25% based on gross profit of her targeted business. *See id.* As to the remaining 50% of the bonus, Plaintiff stated that she "didn't know how [Lomita] wanted to word it," and, therefore, she was "leav[ing] that in [his] hands." *See id.* Plaintiff included signature lines at the end of her email for both her and Lomita. *See id.*

That day, Lomita forwarded the email to Sam Kaplan, E-Lo's Chief Financial Officer ("CFO"), with a courtesy copy to Plaintiff. *See id.* In his email, Lomita stated that he was "agreeing to the below," but also clarified that "on the bonus, its 25% and 25% and we will need to set those goals when I get back." *See id.* Lomita added that the way Plaintiff had written the bonus structure in her email was "not right." *See id.* As to the severance, Lomita stated that there would be a "non compete/non consult that corresponds to the severance. [That is,] if there is a 9 month severance there will be a 9 month non compete/consult." *See id.* Lomita further stated that they could talk through that provision again when he returned. *See id.*

Neither Plaintiff nor Lomita further discussed Plaintiff's proposed terms and conditions for an employment contract. Notwithstanding, Plaintiff continued working for Defendant as an at-will employee without a final and binding employment contract until her termination on October 21, 2015.

## ARGUMENT

### I.     STANDARD

The purpose of summary judgment is to isolate and terminate claims that are factually unsupported so as to avoid costly and unnecessary trials. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Cohane v. NCAA*, 612 Fed. Appx. 41 (2d Cir. 2015). Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)(2). In that regard, a particular fact will be deemed "material" only if its existence or non-existence would "affect the outcome of the suit under governing law." *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007) (citation and internal quotations omitted). Likewise, an issue will only be considered "genuine" if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 148 (citation and internal quotations omitted). On a motion for summary judgment, the district court has discretion to grant summary judgment in favor of a non-moving party *sua sponte*, "where it appear[s] from the papers, affidavits and other proofs submitted by the parties that there [are] no disputed issues of material fact and that judgment for the non-moving party would be appropriate as a matter of law." *Lowenschuss v. Kane*, 520 F.2d 255, 261 (2d Cir. 1975); *see also Schwan-Stabilo Cosmetics GmbH & Co. v. PacificLink Int'l Corp.*, 401 F.3d 23, 33 (2d Cir. 2005) ("District courts have the discretion to grant summary judgment *sua sponte*, even without notice in certain circumstances.").

### II.    PLAINTIFF CANNOT ESTABLISH HER BREACH OF CONTRACT CLAIM

In her motion, Plaintiff seeks judgment as a matter of law with respect to her breach of contract claim against Defendant. *See* Plaintiff's MOL at 6-9. Specifically, Plaintiff argues that

the series of emails between her and Lomita in February and March 2015 created a valid and enforceable contract by which Defendant agreed to pay Plaintiff nine months' severance upon her termination. *See id.* at 6-8. Plaintiff further argues that she performed under the contract for 18 months, by working for Defendant and receiving a salary and benefits. *See id.* at 8. Finally, Plaintiff claims that Defendant breached the purported agreement by failing to pay her any severance upon the termination of her employment. *See id.* at 9. For the reasons set forth herein, Plaintiff's arguments are unavailing and her motion for summary judgment must be denied.

To establish a breach of contract claim under New York law, Plaintiff must demonstrate the following: (1) the formation of a valid contract; (2) performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages. *See Orchard Hill Master Fund Ltd. v. SBA Communs. Corp.*, 830 F.3d 152, 156 (2d Cir. 2015). Here, Plaintiff's breach of contract claim must fail because she cannot establish the first two elements of her claim.

### A.    Plaintiff Cannot Demonstrate the Formation of an Enforceable Contract

In order to form a valid and enforceable contract under New York law, "there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (citation and internal quotations omitted). With respect to the "mutual assent" requirement, there must be "an objective meeting of the minds, and a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Mills v. Chauvin*, 103 A.D.3d 1041, 1047 (3rd Dep't 2013) (quoting *Express Indus. & Terminal Corp. v. New York State DOT*, 93 N.Y.2d 584, 589 (N.Y. 1999)). Here, because the parties clearly did not intend to be bound by the purported agreement, Plaintiff's breach of contract claim must fail.

>    1.    *The March 24, 2015 Email Exchange Did Not Constitute A Signed Contract*

Initially, Plaintiff argues that the March 24, 2015 email exchange between herself and Lomita constituted a signed writing sufficient to satisfy the Statute of Frauds. *See* Plaintiff's MOL at 6-7. Specifically, Plaintiff argues that, because each party typed his or her name at the foot of their respective emails, the email exchange is sufficient to satisfy the "signed writing" requirement of New York General Obligation Law § 5-701. *See id.* Plaintiff's argument is misplaced.

First, contrary to Plaintiff's assertion, Lomita's signature on his email did not satisfy the requirements of the statute of frauds. As demonstrated by Plaintiff's own exhibits, the printed name at the foot of the March 24, 2015 email was the same pre-printed signature block that was automatically affixed to the bottom of all of Lomita's correspondence. *See* Plaintiff's Exhibits A-C; *see also* Lomita Declaration ¶ 12; Defendant's Exhibits 1-3. It is well settled that such pre-printed signatures are insufficient to satisfy the statute of frauds, as they do not signify the party's intent to authenticate the preceding correspondence. *See, e.g.*, *Landesbank v. 45 John St. LLC*, 102 A.D.3d 587, 587-88 (1st Dep't 2013) ("[T]he email relied upon by defendants, which contained a pre-printed signature, was not a sufficient writing under the statute of frauds."); *see also Parma Tile Mosaic & Marble Co. v. Estate of Short*, 87 N.Y.2d 524, 527-29 (N.Y. 1996) (holding that the act of programming a fax machine to automatically imprint the company's name on every page transmitted was not sufficient to authenticate the particular writing at issue).

Second, as Plaintiff notes, the statute of frauds is inapplicable in this case, as the alleged contract was capable of performance within one year. *See N.Y. Gen. Oblig. Law § 5-701(a).* Nonetheless, Plaintiff argues that the parties' signatures are persuasive evidence of the parties intent to be bound by the contract. *See* Plaintiff's MOL at 7. This argument is patently absurd.

7

Throughout their correspondence, both Plaintiff and Lomita indicated their intent to sign the agreement when it was finalized. *See* Exhibits 1-3. Had the parties intended for their email signatures to bind them to a contract, their continued recitations of their intent to sign the agreement would have been superfluous. Thus, Plaintiff cannot establish the existence of a signed agreement.

2.    *The Parties Did Not Intend To Be Bound By The Purported Contract*

In light of the fact that there was no signed contract, the issue then becomes whether the parties intended to be bound by the purported agreement, notwithstanding the absence of a signed writing. "It is well settled that, if the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed." *Jordan Panel Sys., Corp. v. Turner Constr. Co.*, 45 A.D.3d 165, 166 (1st Dep't 2007) (quoting *Scheck v. Francis*, 26 N.Y.2d 466, 469-70 (N.Y. 1970)) (internal quotations omitted). When determining whether parties intended to be bound in the absence of an executed agreement, courts consider the four factors identified in *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78 (2d Cir. 1985) (hereinafter, the *Winston* factors): (1) whether there has been an express reservation of the right not to be bound absent a signed writing; (2) whether there has been partial performance; (3) whether all of the terms of the alleged contract had been agreed upon such that no further negotiations were required; and (4) whether the agreement is the type of contract that is usually committed to writing. *See Braun v. CMGI, Inc.*, No. 99 Civ. 12328 (WHP), 2001 U.S. Dist. LEXIS 11808, at *18-19 (S.D.N.Y. Aug. 14, 2001) (citing *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75-76 (2d Cir. 1984)); *see also Ciaramella v. Reader's Digest Association, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997); *Winston*, 777 F.2d at 80. No single one of these factors is dispositive, and the court should consider each factor in the context of the entire case. *See Powell v. Omnicom*, 497

8

F.3d 124, 129-30 (2d Cir. 2007). Nonetheless, when determining the parties' intent, "[t]he most important factor to consider is whether the parties expressly reserved their contractual obligations until the execution of a writing." *Braun*, 2011 U.S. Dist. LEXIS 11808, at *19 (citing *Arcadian Phosphates Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989)). Thus, "where there is a writing between the parties showing that [one party] did not intend to be bound … a court need look no further than the first factor." *Kaczmarcysk v. Dutton*, 414 Fed. Appx. 354, 355 (2d Cir. Feb. 22, 2011) (quoting *RKG Holdings, Inc. v. Simon*, 182 F.3d 901, 901 (2d Cir. 1999)) (internal quotations omitted) (alterations in original).

### i.     Express Reservation of Right Not to be Bound

With respect to the first *Winston* factor, not only was there an express reservation of the right not to be bound in the absence of a signed writing, but it was **Plaintiff** who made such a reservation. Specifically, when Plaintiff first proposed entering into an employment agreement, Lomita indicated that he was open to considering it, and requested additional information from Plaintiff as to what she was seeking. *See* Lomita Declaration ¶ 4; Exhibit 1 at 7. In response, Plaintiff stated, "The agreement can be in a [sic] form of an offer letter **as long as it is signed and agreed to by both of us**." *Id.* By this statement, Plaintiff expressly reserved her right only to be bound by a signed writing, and her self-serving attempt to disavow that express reservation must be rejected. Accordingly, this Court need look no further than Plaintiff's own statement to conclude that the parties did not intend to be bound in the absence of a fully-executed document. *See Kaczmarcysk*, 414 Fed. Appx. at 355.

Moreover, even in the absence of an express reservation, such a reservation still may be implied from "the language and conduct of the parties." *See, e.g.*, *Sprint Communs. Co. L.P. v. Jasco Trading, Inc.*, 5 F. Supp. 3d 323, 332 (E.D.N.Y. 2014); *see also Lindner v. Am. Express Corp.*, No. 06 Civ. 3834 (JGK), 2007 U.S. Dist. LEXIS 41178, at *19 (S.D.N.Y. May 31, 2007)

9

("Although this factor is phrased in terms of 'express' reservations, courts … also analyze whether the particular facts and circumstances of the case … demonstrate an implied reservation of the right not to be bound until the execution of a written agreement.").  Here, the conduct of both parties clearly indicates that they intended to be bound only by a signed writing. First, as stated above, Plaintiff expressly stated that the agreement had to be signed by both parties. *See* Exhibit 1 at 7. Thereafter, in her March 19, 2015 email, Plaintiff again reiterated her intent to have both parties sign the final agreement. *See* Exhibit 2. Additionally, in the subject line of her March 24, 2015 email, Plaintiff wrote "Agreement to be signed," and included signature lines for both her and Lomita. *See* Exhibit 3. Plaintiff also asked Lomita to let her know when they could both meet to sign the finalized agreement. *See id.* As for Lomita, in his March 24, 2015 response, he stated that there were still provisions that required further negotiation, and that he would "sign when [he got] back." *See id.* These actions and statements clearly indicate that both parties intended only to be bound by a signed writing. Thus, the first *Winston* factor weighs heavily against finding the existence of an enforceable contract.

### ii.    Unresolved Material Terms

As to the third *Winston* factor,[2] the March 24, 2015 email exchange clearly indicates that there were material terms that required further negotiation. "Few principles are better settled in the law of contracts that the requirement of definiteness. If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *Missigman v. USI Northeast, Inc.*, 131 F. Supp. 2d 495, 506 (S.D.N.Y. 2001). In the absence of definiteness, courts cannot determine whether a contract has been breached and, therefore, cannot fashion an appropriate remedy. *See id.* (citing *Cobble Hill Nursing Home, Inc. v. Henry and Warren Corp.*,

---

[2] The third factor is being addressed before the second factor, as a resolution of the second factor requires an understanding of the third factor.

74 N.Y.2d 475, 482 (N.Y. 1989). Thus, unless the agreement establishes the intention of the parties with sufficient certainty and definiteness to be enforced by a court, there is no "meeting of the minds" and the contract is unenforceable. *See Saul v. Cahan*, No. 500494/2014, 2014 N.Y. Misc. LEXIS 4796, at *13-14 (Sup. Ct. Kings Co. Nov. 7, 2014) (citing *Mills*, 103 A.D.3d at 1047).

As written, the purported contract is not sufficiently definite with respect to several material terms. First, with respect to the bonus, the parties clearly had different understandings of how the bonus would be structured, with Lomita bluntly stating that the way Plaintiff had it written was "not right." *See* Exhibit 3. Indeed, Plaintiff's proposed version had her receiving 150% of her salary as a bonus, and provided alternative language to be used in any final agreement. *See id.* ("**Or** we can say balance of 50% will be at CEO discretion."). Moreover, there clearly was more negotiation to be done, as Lomita noted that they would have to set Plaintiff's performance goals when he returned from his trip. *See id.* "Price or compensation are material terms in a contract requiring definiteness [and] a future agreement to agree on compensation is too indefinite for enforcement." *Major League Baseball Props. v. Opening Day Prods.*, 385 F. Supp. 2d 256, 271 (S.D.N.Y. 2004). Here, the purported employment agreement leaves open the subject of how Plaintiff's bonus compensation would be structured and determined. With such a key term left unresolved, the parties cannot be said to have reached agreement on all material terms. *Cf. Lyman v. New York & Presbyterian Hosp.*, No. 11 Civ. 3889 (AJN) (JCF), 2012 U.S. Dist. LEXIS 175498, at *20-21 (S.D.N.Y. Dec. 11, 2012), *adopted by*, 2013 U.S. Dist. LEXIS 14953 (S.D.N.Y. Feb. 1, 2013) (finding no enforceable agreement where the parties to a settlement had agreed on all essential terms except the manner in which payment was to be made).

11

In addition to the bonus, Plaintiff's severance, the very provision at issue in this case, was left unsettled following the March 24, 2015 email exchange. Notably, with respect to the severance, Lomita stated, "There will also be a non compete/non consult that corresponds to the severance. [That is,] **if** there is a 9 month severance there will be a 9 month non compete/consult." *See* Exhibit 3 (emphasis added). Lomita added that they could "talk thru it again" when he returned from his trip. *See id.* Lomita's response gave clear indication that the matter of severance had not yet been resolved, other than that it would run commensurate with a non-compete clause. *See id.* Additionally, the history of the parties' communications reveals that Lomita consistently pushed back on Plaintiff's severance proposals, and was adamant that he would only agree to severance in consideration for a covenant not to compete. *See* Exhibits 1-3. In fact, the 9 months' severance proposed by Plaintiff on March 24, 2015, previously had been rejected by Lomita only days before. *See* Exhibit 2 at 2. Contrary to Plaintiff's assertions, the March 24, 2015 email exchange demonstrates that the parties had failed to reach agreement on the exact provision under which she now seeks to recover.

Even assuming, without conceding, that there was an agreement regarding the duration of the severance, there still was no agreement regarding the reciprocal promise Lomita sought from Plaintiff as consideration for the severance. Again, the only issue that had been resolved with respect to the severance was that it would serve as consideration for a corresponding covenant not to compete, and vice versa. *See* Exhibit 3. It is a fundamental principle of contract law that "the promises of both parties to a bilateral contract must be supported by consideration, [and] the contract is unenforceable if the promise of either party is illusory." *Curtis Props. Corp. v. Greif Cos.*, 212 A.D.2d 259, 265 (1st Dep't 1995). Thus, in this case, without a valid and enforceable non-compete provision, there can be no contractually-owed severance.

12

In New York, restrictive covenants are generally disfavored and will only be enforced if they are reasonable in terms of scope, duration and geographic area. *See, e.g.*, *Nostrum Pharms., LLC v. Dixit*, No. 13 Civ. 8718 (CM), 2016 U.S. Dist. LEXIS 133844, at *47 (S.D.N.Y. Sept. 23, 2016); *see also BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 389 (N.Y. 1999). Where a covenant not to compete is ambiguous in its terms or over broad in terms of scope, duration, or area, it will not be enforced. *See, e.g.*, *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 507 (S.D.N.Y. 2011) (refusing to enforce a non-compete provision in an employment agreement that was excessive in terms of duration, did not provide for any geographic limitations, and was ambiguous and over broad with respect to scope); *Heartland Sec. Corp. v. Gerstenblatt*, No. 99 Civ. 3694 (WHP), 2000 U.S. Dist. LEXIS 3496, at *20-22 (S.D.N.Y. May 20, 2000) (refusing to enforce restrictive covenants that were "patently unreasonable" in terms of duration and geographic scope).

Here, there can be no dispute that the parties never reached agreement on a valid and enforceable non-compete clause. Even assuming that there was agreement with regard to the duration of the proposed non-compete provision, there was no agreement, or even discussion, with respect to its scope or the geographic area. Indeed, the non-compete clause consists of nothing more than the word "non-compete," without even the slightest degree of specificity regarding Plaintiff's duties and obligations under that provision. Plaintiff herself indicated that she did not understand what Lomita intended with respect to this provision, and requested that he provide "a sentence or two" to define the scope of the provision. *See* Exhibit 2 at 2. Thus, as contained in the purported employment agreement, the non-compete provision is wholly incapable of enforcement.  Plaintiff's alleged promise to be bound by a wholly unenforceable restrictive covenant is an illusory promise that bestows no benefit on Defendant and obliges

13

Plaintiff to nothing. As a result, Plaintiff has provided no consideration for the severance she claims to be owed. Where, as here, Plaintiff has provided nothing, she can recover nothing in return. *See Transperfect Translations Int'l, Inc. v. Merrill Corp.*, No. 03 Civ. 10146 (LAP), 2004 U.S. Dist. LEXIS 24014, at *10-11 (S.D.N.Y. Nov. 29, 2004).

Here, the parties' communications clearly demonstrate that there were material terms that required further negotiation. As such, the third *Winston* factor also weighs in favor of Defendant's position.

### iii.   No Partial Performance

Returning to the second *Winston* factor, the issue of whether there was partial performance of the contract also weighs in favor of finding the absence of an enforceable agreement. In her memorandum of law, Plaintiff argues that the parties performed under the contract for nineteen months, in that Plaintiff worked for Defendant and Defendant paid her salary and benefits. *See* Plaintiff's MOL at 8. Plaintiff's argument is once again misplaced.

As an initial matter, Plaintiff claims that "[i]mmediately upon agreement of the terms of her employment, Ms. Nusbaum assumed her role as President of the Nanette Lepore brand … ." *See* Plaintiff's MOL at 8. Plaintiff's argument is curious, given that the purported employment agreement she seeks to enforce was allegedly finalized **the day after she commenced her employment**. That is, Plaintiff commenced her employment on March 23, 2015, but, according to her, the parties finalized the employment agreement at issue on March 24, 2015. Thus, by Plaintiff's own account, the parties began performing under the employment agreement before the employment agreement came into existence. The conclusion that the parties chose to perform under a non-existent contract runs contrary to logic and common sense.

Here, the fact that Plaintiff worked for E-Lo, and received compensation for her services, is not indicative of the parties intent to be bound by the terms of the purported employment

agreement; it simply indicates that they agreed to enter into an employment relationship. *See generally Kaumagraph Co. v. Stampagraph Co.*, 197 A.D. 66, 76 (1st Dep't 1921) (noting that an employee's "labor is a full return for [her] wage"). To conclude that Plaintiff reporting to work and receiving compensation for her labor was evidence of the existence of a binding employment agreement would run afoul of New York's long-settled presumption of at-will employment. *See generally Albert v. Loksen*, 239 F.3d 256, 264 (2d Cir. 2001) ("New York has a well-established at-will employment doctrine.") Such a conclusion would be particularly misplaced in this case, as the undisputed facts establish that Plaintiff's employment commenced **before** the date when the parties allegedly finalized the terms of their employment agreement. Thus, the alleged employment agreement was not a contract for employment at all; rather, it was an attempt by Plaintiff to secure benefits over and above what she would receive as compensation for her services. Specifically, as discussed above, Plaintiff was attempting to secure severance pay in the event of her termination, and the consideration for that severance was to be a covenant not to compete. Accordingly, the relevant inquiry is not whether Plaintiff performed under the terms of her at-will employment relationship; it is whether she fulfilled her obligations under the non-compete clause of her proposed severance agreement.

Here, Plaintiff has not alleged, nor could she demonstrate, that she fulfilled her obligations under the non-compete provision of the proposed severance agreement. Indeed, as set forth in subsection ii, *supra*, it is impossible to determine what those obligations were, as no agreement was reached with respect to the scope of that restrictive covenant. Moreover, to the extent that Plaintiff was to be restricted in seeking subsequent employment, her Complaint demonstrates that she made no attempt to fulfill that promise. Specifically, Plaintiff alleges that Lomita has interfered with her attempts to obtain subsequent employment, thus demonstrating

that Plaintiff has sought other employment during the purported severance period. *See* Complaint ¶¶ 46-47. Accordingly, because Plaintiff cannot demonstrate that she performed under the terms of the severance agreement, the second *Winston* factor also weighs in favor of Defendant.

### iv.   Type of Contract Typically Committed to Writing

The final *Winston* factor asks whether the agreement at issue is of the type that is usually committed to writing. "In the absence of custom, courts will assume that a transaction of sufficient substance or complexity will usually require a writing." *P.A. Bergner & Co. v. Martinez*, 823 F. Supp. 151, 158 (S.D.N.Y. 1993). Here, the purported contract involved a complex bonus structure, a covenant not to compete, annual compensation of up to $650,000, and provided for varying terms based on the duration of the employment relationship. *See* Exhibit 3. Moreover, the agreement's alleged terms were sufficiently complex as to require multiple proposals and counter-proposals by the parties. *See* Exhibits 1-3. Thus, this clearly is the type of agreement that parties typically commit to writing. *Cf. Winston*, 777 F.2d at 83 (concluding that a settle agreement was sufficiently complex because "the $62,500 at issue [was] not a trifling amount, and payment was to be made over several years based on a percentage of earnings"). Accordingly, this fourth and final factor also indicates that the parties did not intend to be bound by the March 24, 2015 email exchange.

In sum, all four of the *Winston* factors weigh in favor of Defendant's position—the parties did not intend to be bound in the absence of a formalized agreement signed by both parties. Here, because no such agreement exists, Plaintiff's breach of contract claim fails as a matter of law.

### B.   Plaintiff Has Not Demonstrated the Requisite Performance.

Alternatively, Plaintiff's motion must be denied because she has not established the requisite element of performance. That is, to establish her breach of contract claim, Plaintiff must

demonstrate that she performed her obligations under the purported contract, and it was Defendant, not Plaintiff, who breached a duty owed under that agreement. *See, e.g.*, *Schupak Group v. Travelers Cas. & Sur. Co. of Am.*, 716 F. Supp. 2d 262, 268 (S.D.N.Y. 2010). Here, as discussed above, the purported contract stated that the severance period would run commensurate with a non-compete clause. *See* Exhibit 3. Thus, to establish adequate performance, Plaintiff must demonstrate that she performed her obligations under the contemplated restrictive covenant. Here, Plaintiff has not even attempted to demonstrate that she complied with the non-compete clause in the purported contract. As a result, she has not met her burden of establishing adequate performance. *See Schupak*, 716 F. Supp. 2d at 268 (dismissing plaintiff's breach of contract claim where she failed to allege adequate performance of two the conditions precedent to recovery under the contract).

17

## **CONCLUSION**

In light of the foregoing, Defendants respectfully request that Plaintiff's motion for summary judgment be denied, and that the Court grant such other and further relief it deems just and proper.

Dated: New York, New York
      November 6, 2017

                    Respectfully Submitted,

                    GORDON REES SCULLY
                    MANSUKHANI, LLP

                    By: _____/s Christopher A. Seacord_____
                        Mercedes Colwin
                        Christopher A. Seacord
                        Francis J. Giambalvo
                        One Battery Park Plaza, 28th Floor
                        New York, New York 10004
                        Phone: (212) 269-5500
                        Fax: (212) 269-5505
                        mcolwin@grsm.com
                        cseacord@grsm.com
                        fgiambalvo@grsm.com

                        *Attorneys for Defendant*