UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 1, 2017

------------------------------------------------------------X
                    :

JAN NUSBAUM,              :

                    :

          Plaintiff,       :             17-cv-3646 (KBF)

                    :

        -v-             :         OPINION & ORDER

                    :

E-LO SPORTSWEAR LLC,    :

                    :

         Defendant.     :

------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

      Jan Nusbaum ("Nusbaum" or "plaintiff") began working for E-Lo Sportswear LLC ("E-Lo" or "defendant") on March 23, 2015; after 19 months, her employment was terminated. On May 15, 2017, Nusbaum filed suit alleging gender discrimination, sexual harassment, a hostile work environment, retaliation, and breach of contract. (ECF No. 1.) On October 5, 2017, plaintiff filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on Count V, the breach of contract claim. (ECF No. 26.) The Court subsequently converted that motion to one for summary judgment under Rule 56 and gave the parties time to file supplemental factual materials. (ECF No. 29.)

      The question before the Court is whether plaintiff and defendant entered into a legally enforceable employment contract for, inter alia, nine months' severance pay in the event of plaintiff's termination. Plaintiff alleges she is owed this payment; defendant disagrees. For the reasons set forth below, the Court finds a

legally binding agreement. Plaintiff's motion for summary judgment on Count V is thus GRANTED.

I. BACKGROUND

Plaintiff is a "business leader and marketing veteran in the fashion industry." (Mem. in Supp., ECF No. 27, at 2.) Defendant is a fashion house that manufactures, designs, and markets clothing. (Lomita Decl., ECF No. 35, ¶¶ 2.) David Lomita, defendant's president and chief executive officer, served as defendant's representative during E-Lo's employment negotiations with plaintiff. (Lomita Decl. ¶¶ 1, 5.) In or about February 2015, Nusbaum and Lomita began negotiating her potential employment as president of E-Lo's Nanette Lepore division. (Id. ¶ 3.) Both parties submitted a series of emails to the Court as evidence of a purported employment agreement, or lack thereof; the term of particular relevance to the instant motion relates to a potential severance package. All told, the parties dispute whether the emails serve as evidence of mutual assent—either as a signed writing or through clear intent—to an employment contract that, inter alia, provides for nine months' severance pay.

The parties conducted their negotiations on the terms of an agreement through email and oral communications (typically confirmed by email). The first email exchange took place from February 24–25, 2015, in advance of an in-person meeting on the morning of February 27, 2015. (ECF No. 35-1.) The exchange sets forth six numbered items—including salary, budget, hiring, and start date—and

establishes back-and-forth on each term between Nusbaum and Lomita. A number of items were left open to discuss at the in-person meeting. (See id. at 7–9.)

During this exchange, Nusbaum stated that she wanted to "make sure that [salary, bonus, vacation, sick days, insurance, stock upon start date, and severance package] are in writing and agreed upon." (Id. at 8.) When Lomita asked for Nusbaum's current contract to use as a "boilerplate," Nusbaum responded that she did not want to share it and instead listed out the various items it included. (Id. at 8–9.) One of these items was a severance package; Lomita responded that they "NEED TO DISCUSS ..LIKE I SAID I WANT TO SEE WHATS BEEN OUT THERE . W/ THIS I ASSUME COMES NON COMPETES 0+3." (ECF No. 35-1 At 9 (emphasis in original).) Lomita also noted that while "NO ONE HERE [at E-Lo] HAS AN EMPLOMENT [sic] AGREEMEN [sic] OR A CONTRACT. I AM OK W/ THE CONCEPT OF IT . . . ." (Id. at 8 (emphasis in original).)

On February 27, 2015, at 4:16 p.m., Lomita emailed Nusbaum to "summarize what [they] agreed to." (ECF No. 28-1 at 2.) On severance, Lomita said he would "get [Nusbaum] the concept tomorrow or Monday." (Id.) The next email is dated March 13–19, 2015. Like the February 24–25 emails, it discusses a number of terms. Nusbaum proposed "1 year severance if let go with in the first 18 months and 9 months severance thereafter." (ECF No. 35-2, at 3; ECF No. 28-2 at 3.) Lomita responded:

> ALL OF THE ABOVE IS CONF EXCEPT THE SEVERANCE—
> SEVERANCE WE WILL RUN A FLAT 6 MONTH. I FEEL THAT
> ONCE YOU ARE HERE FOR, SAY A 3 YEAR PERIOD, WE CAN RE
> ADDRESS THIS AND ADD MONTHS. I ALSO WANT TO ADD A

NON COMPETE / NON DISCLOSURE THAT WILL RUN
COMMENSURATE W/ THE SEVERANCE.

(ECF No. 35-2, at 3 (emphasis in original); ECF No. 28-2 at 3 (emphasis in

original).)  Nusbaum countered and suggested "meeting [her] in the middle [at] 9

months," with "an additional 3 months after three years as [Lomita] suggested.  I

appreciate you want a comfort level too, so the non compete is ok, can you give a

sentence or two to define?"  (ECF No. 35-2, at 3; ECF No. 28-2 at 3.)  The bottom of

this email, which Jan had "put together for [their] agreement," included blanks for

each of their signatures and dates.  (ECF No. 35-2, at 4; ECF No. 28-2 at 4.)  It is

undisputed that signatures (ink or electronic) were never appended to the

document.

Nusbaum began work on March 23, 2015.  (Lomita Decl. ¶ 7.)  The next day,

they exchanged a final series of emails on the terms of an agreement.  Nusbaum

wrote Lomita "based on [their] discussion" that, _inter alia_, she understood the

severance provision to be: "9 months severance if let go with in the first three years

and 12 months severance thereafter. A Non compete/non disclosure will run

commensurate with severance."  (ECF No. 28-3 at 3.)  Lomita forwarded this email

to Sam Kaplan, the "senior most financial official at the company," (Reply Mem.,

ECF No. 37, at 10), copying Nusbaum, with a message:

> Sam…I am agreeing to the below and I am ccing Jan [Nusbaum]. . . .
> There will also be a non compete / non consult that corresponds to the
> severance.  Ie if there is a 9 month severance there will be a 9 month
> non compete/consult.  And we can talk thru it again when I return.  I
> just wanted to get this done b/4 I leave . I will sign when I get back.

(ECF No. 28-3 at 2.)

The terms of the employment agreement were never further reduced to a signed writing. (Lomita Decl. ¶ 11.) Nusbaum asserts that Lomita assured her that he would sign an agreement and that she "[could] trust him." (Nusbaum Decl. ¶¶ 2, 6 (alterations omitted).) He does not dispute that he made such statements. Nusbaum also asserts that she believed that the email Lomita forwarded to Kaplan—in which he was "agreeing to the below"—served as a "final writing reflecting the terms and conditions of [her] employment." (Nusbaum Decl. ¶ 8.) According to the Complaint, Nusbaum was terminated on October 21, 2016; to date, she has not received severance pay. (Compl. ¶ 45.)

## II. PROCEDURAL POSTURE

On October 5, 2017, plaintiff moved for judgment on the pleadings under Federal Rule of Procedure 12(c). (ECF No. 26.) Because plaintiff submitted exhibits with that motion, the Court converted it to a Rule 56 motion for summary judgment and provided parties with an opportunity to submit supplemental materials. (ECF No. 29.) See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); see also Sahu v. Union Carbide Corp., 548 F.3d 59, 67 (2d Cir. 2008).

## III. LEGAL PRINCIPLES

### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

5

as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322-23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted).

B. Breach of Contract

To succeed on a claim for breach of contract, a plaintiff must demonstrate "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co., 375 F.3d 168, 177 (2d Cir. 2004)

(quoting <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 348 (2d Cir. 1996)).  In New York, "the fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties.  If there is no meeting of the minds on all essential terms, there is no contract.  This is because an enforceable contract requires mutual assent to the essential terms and conditions thereof."  <u>Opals on Ice Lingerie v. Bodylines Inc.</u>, 320 F.3d 362, 372 (2d Cir. 2003) (quoting <u>Schurr v. Austin Galleries of Ill.</u>, 719 F.2d 571, 576 (2d Cir. 1983)); <u>see also</u> <u>Meyer v. Uber Techs., Inc.</u>, 868 F.3d 66, 74 (2d Cir. 2017) ("To form a contract, there must be '[m]utual manifestation of assent, whether by written or spoken word or by conduct.'" (quoting <u>Specht v. Netscape Comms. Corp.</u>, 306 F.3d 17, 29 (2d Cir. 2002)).

A signed writing can serve as evidence of mutual assent, or a "meeting of the minds."  "A party who executes a contract is presumed to know its contents and to assent to them."  <u>Choung v. Allstate Ins. Co.</u>, 724 N.Y.S.2d 882, 882 (N.Y. App. Div. 2001).  A signed writing is not, however, the only way to manifest mutual assent to a contract.  In the absence of an executed agreement, the Court may consider four factors when deciding whether a contract was formed:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

<u>CAC Grp. Inc. v. Maxim Grp. LLC</u>, 523 Fed. App'x 802, 803–04 (2d Cir. 2013) (quoting <u>Winston v. Mediafare Entm't Corp.</u>, 777 F.2d 78, 80 (2d Cir. 1985)); <u>see also</u> <u>Ciaramella v. Reader's Digest Ass'n, Inc.</u>, 131 F.3d 320, 323 (2d Cir. 1997)

(citing the same four-factor test); <u>R.G. Grp., Inc. v. Horn & Hardart Co.</u>, 751 F.2d 69, 75–76 (2d Cir. 1984) (same).

This same test may apply when the "parties have reached complete agreement on all of the issues that require negotiation, but they have not yet completely formalized their agreement." <u>Arcadian Phosphates, Inc. v. Arcadian Corp.</u>, 884 F.2d 69, 72 (2d Cir. 1989). The Second Circuit has found "in some rare instances, if a preliminary agreement clearly manifests such intention [to be bound], it can create binding obligations." <u>Shann v. Dunk</u>, 84 F.3d 73, 77 (2d Cir. 1996). There are two types of preliminary agreements which may be enforced:

> Type I is where all essential terms have been agreed upon in the preliminary contract, no disputed issues are perceived to remain, and a further contract is envisioned primarily to satisfy formalities. Type II is where the parties recognize the existence of open terms, even major ones, but, having agreed on certain important terms, agree to bind themselves to negotiate in good faith to work out the terms remaining open.

<u>Id.</u>; <u>see also</u> <u>Arcadian Phosphates</u>, 884 F.2d 69 at 71–72 (describing the same categories); <u>Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.</u>, 670 F. Supp. 491, 491 (S.D.N.Y. 1987) (stating this categorization for the first time). In analyzing Type I agreements, the Second Circuit has looked to the same four <u>Winston</u> factors. <u>See</u> <u>Brown v. Cara</u>, 420 F.3d 148, 154 (2d Cir. 2005); <u>Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.</u>, 145 F.3d 543, 549 (2d Cir. 1998). "The hallmark of a Type I agreement is that the parties have agreed to all necessary elements of the contract and are, therefore, bound to the ultimate objective despite the fact that a more

formal or elaborate writing has yet to be produced." <u>Brown</u>, 420 F.3d at 154 (2d Cir. 2005).

## IV.    DISCUSSION

The Court finds that the series of emails between Nusbaum and Lomita is a binding contract that requires E-Lo to pay Nusbaum nine months' severance.  As such, E-Lo is liable for breach of contract.  While the series of emails does not qualify as a signed writing, under the <u>Winston</u> factors, they form a binding contract.

The emails demonstrate a "meeting of the minds" on essential terms, including a nine-month severance payment.  A contract does not need to be signed to be binding on the parties.  To determine whether the emails here constitute a formal contract—or a legally binding, "Type I" preliminary agreement—the Court turns to the <u>Winston</u> factors.

The first factor—whether there is an express reservation of the right not to be bound in the absence of a writing—weighs in favor of plaintiff.  While plaintiff did request a written contract, she later "understood Mr. Lomita's March 24, 2015 email to be a final writing reflecting the terms and conditions of [her] employment." (Nusbaum Decl. ¶ 8).  Reasonable jurors would interpret Lomita's note in that email—"I am agreeing to the below"—as a binding agreement that was in writing. (ECF No. 35-3 at 2.)  <u>See</u> <u>Brown</u>, 420 F.2d at 154 (examining whether the "the language of the contract discloses an intention by the parties to be bound to the ultimate objective").  That is to say, earlier that day, Nusbaum and Lomita had discussed and agreed on the severance term over the phone.  (Nusbaum Decl. ¶ 5.)

9

Lomita's subsequent email reduced that oral agreement to writing when he then sent it to Kaplan. Lomita further referenced wanting to "get this done b/4 [he left]." (Id.) Both parties believed the negotiations had concluded (i.e., Lomita said it was "done") and that the email embodied a binding agreement that was implemented the day after Nusbaum began her employment.[1]

The second Winston factor is also in plaintiff's favor. For nineteen months, Nusbaum served as Nanette Lepore's president—the contract was partially performed. Additionally, while plaintiff bears the burden on this motion, the Court merely notes that defendant has put forth no evidence that plaintiff failed to comply with the non-compete clause of the contract's severance package provision.

The third factor supports plaintiff as well—the material term here was agreed to. The emails make clear that Lomita had agreed to nine months' severance; Nusbaum does not seek more than this. The parties do not need to have agreed to what would happen in three years (i.e., whether an additional three months would be added) when the period at issue is all that is of relevance here.

The final factor, whether the agreement at issue is the type normally committed to writing, is also in plaintiff's favor. This agreement is not so "complex" as to require a written document; in fact, by defendant's own admission, E-Lo's usual practice is not to commit employment agreements to writing. See Brown, 420

---

[1] And in any case, whether a party states that it would like an agreement to be in writing is not dispositive. See Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V., 145 F.3d 505, 509 (2d Cir. 1998) ("No single [Winston] factor is dispositive."); McCray v. Cty. of Orange, No. 12-civ-3950, 2015 WL 13373605, at *3 (S.D.N.Y. Dec. 3, 2015) ("While all [of the Winston] factors provide [ ] significant guidance, no single factor is dispositive." (internal quotation omitted).)

F.3d at 155–156 ("New York courts have recognized that the 'complexity and duration of [an] alleged agreement' is particularly significant in determining whether it must be reduced to formal writing in order to be fully enforceable." (citing Warwick Assocs. v. FAI Ins. Ltd., 275 A.D.2d 653 (N.Y. App. Div. 2000)) (alteration in original)).

To conclude, the parties had "agreed to all necessary elements of the contract and are, therefore, bound to the ultimate objective despite the fact that a more formal or elaborate writing ha[d] yet to be produced." Brown, 420 F.3d at 154. In other words, the Court finds that the emails demonstrate that Nusbaum and Lomita had both clearly agreed to nine months' severance in the event of Nusbaum's termination.

V.    CONCLUSION

For the foregoing reasons, the Court rules in favor of plaintiff on Count V. The Court notes that it expects that discovery is still ongoing as to Counts I-IV and VI. The Clerk of Court is directed to terminate the motion at ECF No. 26.

SO ORDERED.

Dated:        New York, New York
              December 1, 2017

_____
        KATHERINE B. FORREST
        United States District Judge